UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANINE H.,[1]

                                      Plaintiff,        Case # 19-CV-1432-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

## INTRODUCTION

On December 28, 2015, Plaintiff Janine H. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), alleging disability as of May 1, 2006. Tr.[2] 78, 84. Plaintiff's date last insured ("DLI") is June 30, 2011. Tr. 72. Upon review, Disability Adjudicator/Examiner E. Heim concluded that there was insufficient evidence to evaluate Plaintiff's claim prior to her DLI. Tr. 74-75. Heim further concluded that there was no Residual Functional Capacity ("RFC") assessment associated with the claim. Tr. 76.

On March 10, 2016, the Social Security Administration (the "SSA") denied her claim and Plaintiff filed a request for review. Tr. 79-85. Plaintiff appeared at a hearing before Administrative Law Judge Melissa Lin Jones (the "ALJ") on September 6, 2018. Tr. 32-71. At the hearing, Plaintiff and Vocational Expert Lanell Hall (the "VE") testified. Tr. 40-71. On October 11, 2018 the ALJ issued an unfavorable decision. Tr. 12-31. The Appeals Council denied review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, Plaintiff's motion is GRANTED the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her

past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520; 416.920.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged disability date of November 22, 2010 through her DLI of June 30, 2011. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine and osteoarthritis." Tr. 18. At step three, the ALJ found that, through the DLI, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19. The ALJ determined that Plaintiff maintained the RFC to perform light work "because she was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. In addition, the [Plaintiff] was able to occasionally balance, stoop, kneel, crouch, and crawl."[4] Tr. 19.

At step four, the ALJ found that, through the DLI, Plaintiff "was capable of performing past relevant work as an ophthalmic technician, cake decorator, and data entry clerk" because such work "did not require the performance of work-related activities precluded by the [Plaintiff's]

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

residual functional capacity." Tr. 23. The ALJ nonetheless proceed to step five and concluded that there were jobs that existed in the national economy that Plaintiff could perform including, for example, "Housekeeper, Cleaner"; "Cashier II"; and "Marker." Tr. 25. As such, the ALJ found that Plaintiff was not disabled.

**II.     Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that (1) the ALJ failed to consider Plaintiff's fibromyalgia at step two; (2) the ALJ's RFC is an impermissible expression of her lay opinion; and (3) the ALJ failed to properly evaluate treating source statements from Dr. Swetz and Chiropractors Bova and Cichocki. Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other arguments.

Plaintiff asserts that the ALJ did not properly assess Plaintiff's fibromyalgia diagnosis at step two. ECF No. 8-1 at 15. This error, Plaintiff argues, infected the ALJ's RFC determination because that determination "fail[ed] to account for the impact of [Plaintiff's] fibromyalgia on her ability to maintain a regular and continuous schedule (i.e., 8 hours a day, 5 days a week)." *Id.* at 17. Plaintiff further asserts that this error also affected the ALJ's credibility determination—a determination that "takes on greater significance in cases involving fibromyalgia." *Id.* The Commissioner contends that the ALJ properly considered Plaintiff's fibromyalgia and appropriately accounted for any limitations due to fibromyalgia in the ALJ's RFC determination. ECF No. 10-1 at 15-19.

Courts generally recognize that fibromyalgia is a disabling impairment and that "there are no objective tests which can confirm the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)). "[M]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and

limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 104. Importantly, courts have taken note of the unique difficulties a diagnosis of fibromyalgia presents in the context of a disability determination. As explained by Judge Posner of the Seventh Circuit, "[fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *see Green–Younger*, 335 F.3d at 108 (holding that "a growing number of courts, including [the Second Circuit], have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted). The main symptoms of fibromyalgia are:

> "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet*, 78 F.3d at 306; *see also Johnston v. Barnhart*, 378 F. Supp. 2d 274, 281 (W.D.N.Y. 2005)("[A] diagnosis of fibromyalgia is based primarily, if not entirely, on subjective complaints of pain.").

In July 2012, the Commissioner of Social Security issued additional rules on evaluating fibromyalgia in disability claims. *See* SSR 12–2p, 2012 WL 3104869 (July 25, 2012). The Commissioner's 2012 SSR provides important guidance relevant to Plaintiff's claims. The SSR states that "[b]ecause the symptoms and signs of FM [fibromyalgia] may vary in severity over time and may even be absent on some days," it is important in making an RFC for a person with FM that the ALJ "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" *Id.* at **5-6. Moreover, in

5

order to obtain "longitudinal evidence," information from nonmedical sources can help "evaluate the severity and functional effects of FM." *Id.* at **4-5. The SSR further provides that "[w]idespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work" and "[p]eople with FM may also have nonexertional physical or mental limitations because of their pain or other symptoms. Some may have environmental restrictions, which are also nonexertional." *Id.* at *6.

SSR12-2p "sets forth criteria to determine whether a claimant has a medically determinable impairment of fibromyalgia." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019) (citing SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012)).

> [S]pecifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded.

*Id.*

Here, the ALJ acknowledged that Plaintiff has been "medically managed" for fibromyalgia. Tr. 18. The Commissioner concedes that "the ALJ did not explicitly evaluate Plaintiff's fibromyalgia under SSR 12-2p in her written decision," but argues that (1) that silence "fails to show that the ALJ did not consider the SSR in considering [Plaintiff's] fibromyalgia"; and (2) "[e]ven if the ALJ's silence was indicative of her failure to consider the SSR, the record shows that Plaintiff failed to prove medically determinable fibromyalgia during the relevant period." ECF No. 10-1 at 18.

6

The Commissioner points to records from Plaintiff's treating physician Dr. Eugene Gosy, M.D. and argues that Dr. Gosy "made no mention of fibromyalgia in Plaintiff's treatment notes until three months before the end of the relevant period," and, at that point, it "was too late to show that [Plaintiff] had medically determinable fibromyalgia during the relevant period." ECF No. 10-1 at 19 (citing Tr. 1056). However, this reasoning overlooks the requirements of SSR 12-2p which "directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate information to determine whether the claimant has a medically determinable impairment of fibromyalgia." *Cooper*, 2019 WL 1109573, at *4 (citing SSR 12-2p, 2012 WL 3104869, at *4). In addition, SSR 12-12p also states that "[i]n cases involving [fibromyalgia] . . . we will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation." *Heineck-Polizzi v. Comm'r of Soc. Sec.*, No. 1:18-CV-01445 EAW, 2020 WL 1284017, at *4 (W.D.N.Y. Mar. 18, 2020) (citing SSR 12-2p, 2012 WL 3104869, at *3) (alterations in original). Therefore, "rather than reject [Plaintiff's] fibromyalgia as a medically determinable impairment due to insufficient evidence in the record, the ALJ should have recontacted [Dr. Gosy] or one of [Plaintiff's] other physicians to determine whether [her] fibromyalgia satisfies the criteria set forth in SSR 12-2p." *Id.*

In its brief, the Commissioner also argues that Plaintiff failed to meet the American College of Rheumatology's ("ACR") 1990 and 2010 criteria for what constitutes medically determinable fibromyalgia. ECF No. 10-1 at 15-17. However, the ALJ's decision does not discuss the ACR's requirements so "[i]t is not clear from the ALJ's decision whether she considered this [ ] diagnostic criteria." *Cooper*, 2019 WL 1109573, at *4. This lack of discussion frustrates this Court's review. *See Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-6224P, 2019 WL 2401593, at *4 (W.D.N.Y. June 7, 2019) ("The Court finds that remand is warranted because it is unable to meaningfully review the

7

ALJ's reasoning that [the plaintiff's] diagnosed fibromyalgia was not a medically determinable impairment according to the guidance detailed in SSR 12-2p.").

Finally, the Commissioner argues that any error at step two with respect to Plaintiff's fibromyalgia is harmless because the ALJ stated that she considered "the limiting effects of all [of Plaintiff's] impairments, even those that were not severe, . . . in determining [her] residual functional capacity." ECF No. 10-1 at 19 (citing Tr. 18) (alterations in original). This argument fails:

> Although the Commissioner is correct that an error at step two may be harmless if the ALJ identifies other severe impairments at the second step and proceeds to consider[ ] any non-severe impairments at the remaining steps, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order), the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that [the plaintiff's] fibromyalgia is not even a medically determinable impairment. This distinction is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable. *See* SSR 12-2p, 2012 WL 3104869, at *5. Put another way, because the ALJ concluded that [the plaintiff's] fibromyalgia is not a medically determinable impairment, she had no basis to credit [the plaintiff's] statements regarding her fibromyalgia-related symptoms in the remainder of her decision.

*Cooper*, 2019 WL 1109573, at *5; *see also Diaz*, 2019 WL 2401593, at *5 ("This distinction is critical because the step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.") (collecting cases).

Accordingly, for the reasons set forth above, the ALJ's decision to exclude Plaintiff's fibromyalgia as a medically determinable impairment is not supported by substantial evidence, and the case is thus remanded for the ALJ to properly evaluate Plaintiff's fibromyalgia under SSR 12-2p.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 30, 2021
       Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court